# United States Court for the Eastern District of Louisiana

## State of Louisiana

| Dodiyi J. Willamwest { COMPLAINANT } Vs { DEFENDANTS } | | | Case Number |
|---|---|---|---|
| Jeffrey Napolitano | Gretna of City | BestBuy/Geek Squad | 07-973 |
| Joe Blow | Hon. Hotard | J.G.Wentworth | |
| Richard Britson | Hon. Groutch | PCA Int'l(Am.Stu. Inc) | |
| Harold Toscano | Hon Ken Reese | Microsoft Corp. | SECT. M MAG. 1 |
| James L. Donovan | Hon. Daniel Schott | Circuit City | |
| Anthony Rhodes | Hon. Paul Valteau | Bellsouth , &AOL | |
| Emmanuel | CDC Parish of Orleans | Allstate insurance Co | |
| Robert W. Drouant | 4th Circuit C.App | Richard Macaluso | |
| Martin Imudia | 24th JDC, J.P. | Maria Tenerio-Oser | |
| Chris Fortmeyer | Hon Jon Gergenheimer | Regions Bank | |
| Hon. Steven Windhorst | State of Louisiana | Greyhound Lines | |
| Hon Rob Schouest | Reliance Nat'l &(LIGA) | RTA | |

**PETITION FOR VIOLATION OF CIVIL RIGHTS, CONSPIRACY, AND DENIAL OF DUE PROCES OF THE LAW , INTERFERING WITH LAWFUL LITIGATION ON THE CLOAK OF OFICIAL DUTY WITH PERSONAL INJURY**

NOW INTO COURT comes DODIYI WILIAMWEST, plaintiff in proper person, a person of the full age of the majority, resident in the City of New Orleans, State of Louisiana, who for his civil rights, personal injuries, and denial of due process under the law represent as follows;

1.

(i) Defendant PCA International(American Studios Inc.), is a foreign business corporation organized, and parent to American Studios Inc, all registered in the State of North Carolina, and duly authorized and doing business in the State of Louisiana.

(ii) Defendant, Honorable Jeffery Napolitano, in his capacity as employer counsel, and counsel for LIGA and PCA int'l(American Studios Inc.) is a person of the full age of the majority, Ex-officio member of the court, duly authorized and practicing law in Jefferson Parish State of Louisiana, and representative of PCA International, Reliance Insurance, and its Trustee LIGA (Louisiana Insurance Guarantee Association).

Fee pauper
___ Process ______
X Dktd ______
___ CtRmDep ______
___ Doc. No ______

(iii) Defendant, Mr. Joe Blow, in his capacity as the agent of MR.J. Napolitano, is a person of the full age of the majority, who residence, and status may only be known by Mr. Jeffrey Napolitano, as will more fully appear hereafter.

(iv ) Defendant Regions Bank is a resident foreign corporation incorporated in the State of Alabama, duly authorized and doing business in City of New Orleans, State of Louisiana, in its capacity as the principal, Richard Macaluso, and Maria Tenerosio-Oser.

(v) Defendant Mr. Richard M. Macaluso, in his capacity as the branch manager, and vice president of Regions Bank, a person of the full age of the majority, domiciled in the city of New Orleans, State of Louisiana.

(vi) Defendant Hon. Rob Schouest is a person of the full age of majority domiciled in City of Gretna, State of Louisiana, Ex-officio deputy clerk of 24thJDC Div. "J".

(vii) Defendant Maria Tenerio-Oser, in her capacity as customer service representative, a person of the full age of majority, and domiciled in the City of New Orleans, State of Louisiana.

(viii) Defendant J. G. Wentworth is a communication directorate and registrar, duly authorized and doing business in the state of Louisiana.

(ix) Defendant Ms J. Smith, in her capacity as driver for Greyhound lines, a cooperation authorized and doing business in City of New Orleans, State of Louisiana

(x) Defendant Regional Transit Authority is a corporation duly authorized and doing business in the city of New Orleans, State of Louisiana.

(xi) Defendant Allstate Insurance Corporation Is A Business Corporation Organized in the State of Illinois, And Duly Authorized And Doing Business In The State Of Louisiana, in its capacity, and the principal for Glenn Hanner.

(xii) Defendant Glenn Hanner, is a person of the full age of the domiciled in the City of Metairie, Jefferson Parish, State of Louisiana, as supervising, adjuster for Allstate Insurance Company.

(xiii) Defendant Honorable Richard Britson, in his capacity, and in his capacity as silent partner of Law Offices of Harold Toscano, jr, is a person of the full age of the majority, and Ex-officio member of the court duly authorized and doing business in the State of Louisiana.

(xiv) Defendant Honorable Harold Toscano, in his capacity, and capacity as staff counsel for Glenn Hanner, and Allstate Insurance Company, is a person of the full age of the majority, and Ex-officio member of the court, duly authorized and doing business in the State of Louisiana.

(xv) Defendant Honorable James L. Donovan, in his capacity, and his capacity as agent for Harold Toscano, and Allstate Insurance Company, is a person of the full age of the majority, and Ex-officio member of the court, duly authorized and doing business in the State of Louisiana.

(xvi) Defendant Mr. Anthony Rhodes, in his capacity and his capacity as special process server for James L. Donovan, Jr, is a person of the full age of the majority, a care taker, duly authorized and doing business, in the State of Louisiana.

(xvii) Defendant Mr. Emmanuel, in his capacity as agent and investigator for Allstate insurance Company, is a person of the full age of the majority, and domiciled in the City of New Orleans, State of Louisiana.

(xviii) Defendant Honorable Jon Gergeheimer, is a person of the full age of the majority, and in his capacity as judicial administrator and Ex-officio member and a recorder of mortgage and processes at Twenty Fourth Judicial District Court for the Parish of Jefferson, which is A Judicial Administration, established to administer justice, for the Parish of Jefferson.

(xix) Defendant Honorable Steven J. Windhorst, is a person of the full age of the majority, in his capacity and capacity as Ex-officio member of the State of

Louisiana, judge of division "J", Twenty Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.

(xx) Defendant Honorable Chris Fortmeyer, in his capacity as a Gretna Police Officer, for the City of Gretna, Jefferson Parish, a person of the full age of the majority, resident in Jefferson Parish, State of Louisiana.

(xxi)Defendant the City of Gretna and Gretna Police, are governmental administration, duly authorized entities, established as a governing body in the City of Gretna, State of Louisiana, which employed and controlled Officer Chris Fortmeyer.

(xxii) Defendant Honorable Ken Reese is a person of the full age of the majority, in his capacity and capacity as Ex-officio member of the bench, presiding over judicial matter, at the Civil District Court Parish of Orleans.

(xxiii) Defendant Honorable Paul Valteau is a person of the full age of the majority, in his capacity, and capacity as supervisor and Sheriff of the Civil District Court, Parish of Orleans, State of Louisiana.

(xxiv) Defendant Honorable Daniel Schott, a person of the full age of the majority, in her capacity and capacity as Ex-officio recorder of mortgage, Court of Appeal, Fourth Circuit, State of Louisiana.

(xxv) Defendant, Honorable Martin Imudia, is a person of the full age of majority, and Ex-officio member of the court, an attorney and officer of the Court, duly authorized, in his capacity and capacity agent for Harold Toscano and Allstate Insurance Company.

(xxvi) Defendant Best Buy, is a business corporation duly authorized and doing business in the City of Harvey, State of Louisiana.

(xxvii) Defendant America On line, in its capacity as internet provider, is a foreign corporation organized in the State of Florida, and duly authorized and doing business in the State of Louisiana.

(xxviii) Defendant Bellsouth in its capacity as telephone service provider, is a foreign corporation organized in the State of Georgia, duly authorized and doing business in the State of Louisiana.

(xxix) Defendant HANO is Housing Association, duly authorized to provide guesthouse, and temporary housing for low income and disabled persons, duly authorized and doing business in the city of New Orleans, State of Louisiana.

2.

**Statement of Jurisdictional Amount and Statutes**

(a) The jurisdiction is based on diversity, Federal questions, Civil rights violations, and the amount in controversy exceeds hundred and fifty thousand United States Dollars, and as follows:

(b) 71 CJS 513; Fed. R. Civ. Proc. 18(a); 19(a); 20(a) –23

(c ) 314 P 2d 625, 631; 47 F. Supp. 395, 400-01; Penal Code §5.03

(d)Title VII of the Civil Rights Acts of 1964, 42 U.S. C. § 2000e-2; 42 U.S.C. §2000e-4; §2000(h); 42 U.S.C. §§ 1975; 42 U.S.C. §§1981, relief under the Equal Opportunity Commission, and ADA laws.

(e) Clayton Act 15 USC 12-27;

(f) Robinson-Patman Act Sec. 2(a); 15 USC 13(a)(c)(d)-(f)

. 234 F. Supp. 201, 203; 310 F. 2d 262, 267

Jurisdiction in this matter is also founded on Civil Rights #440; #443; #445; #446; especially, Racketeering #470; 42 U.S.C. 1983; Civil rights Acts 365 US 167; 564 F. 2d 849, 855; Freedom of information #895; Equal Access to justice# 900; #950; Contracts #110; 190; Torts #320; #370; #371; Banks and banking # 430;

**Labor: #791;15 U. S. C. § 45(1)345 U.S. 278,282; US Constitutional Amendments 1-6, as made applicable by the Fourteenth, as will more fully appear hereafter.**

**(g) The State courts of Louisiana, through its judicial system has consistently, refused to give plaintiff herein justice, often conspiring, and perverting justice against him for more than twenty years, violating his due process rights under the Constitution of United States, and denying him equal protection under the law, his litigious rights, and the right to seek redress, as contained in Amendments 1 through Sixth Amendments of the United States Constitution as made applicable by the Fourteenth Amendment to states.**

**3.**

**(I) This lawsuit is peculiar, because it is the first time in American Jurisprudence that a plaintiff, who has been given a leeway to determine an obvious sanction against defendants had held the plaintiff hostage, while the sanction was been tried, and then denied, and his case dismissed, and somehow he was commanded <u>not to seek relief for torture and civil rights violations against defendants in trial court</u>, except in the court of appeal. Surprisingly, the court of appeal omitted facts by intrinsic fraud, and held that it was reasonable to hold an innocent plaintiff hostage, by a guilty defendant, and dismiss his case, <u>to keep him out of court affirming trial court's hearing while plaintiff was in the hospital restricted by defendants cronies.</u>**

**4.**

**(a) All the above mentioned defendants have contacted and contracted to defraud plaintiff by conspiracy to keep plaintiff Dodlyi J. Williamwest, out of court and stopping him with frivolous pleadings from executing his judgments, which is about Six million, three hundred thousand, four hundred and twenty seven Dollars, altogether;**

(b) The fraud and conspiracy included discrimination, denial of civil rights, equal protection of the law, doe process, suppression of evidence used at trial, and encouraged the shredding of evidence filed into court record; invaded his privacy, depletion of his accounts and ability make documents, charging him for writing bad checks, jail, and or terrorized him, to accept to be their witch or active wig wearer; it included hold him hostage until his sanctions were tried without him being present, or all his civil actions dismissed, then isolating him, and making him destitute till he dies in the street, or be killed by law enforcers cooperating with judges, now acting as volunteer Special Police Officers, who target those whose money they have, or whose litigation could be ceded with their cronies, to be executed in their benefit, for example Martin Imudia, and the younger model and semblance he parades at the Twenty Fourth Judicial District Court for the Parish of Jefferson, and the payment plaintiff made that Hon. Steven Windhorst instructs to be put in Hon. Martin Imudia's name, despite plaintiff's protest that he had withdrawn as counsel since March, 1999. In another, instance, the court, suspended trial on the merits parties had agreed to, then reopened the case for discovery after several bump trial dates, ordered all parties to make discoveries, but as soon defendants finished their discovery, and without giving plaintiff the items he want discovered, set case for summary pretending to be making discoveries, presenting extrinsic and intrinsic fraud to get judgment they are clearly not entitled to, withholding judgment until time for appeal is almost exhausted to release judgment, putting pressure on him, and arranging with court security not to let him gain access to court, or denying him a day in court to put forth his testimony after accepting payment from him for trial it on the merit, holding him hostage, while trial was being had, and denying him right to appeal, in certain other cases, as will more fully appear hereafter.

**They also organize special process servers to harass him, loot his apartment, duplicate his phones numbers, take his Ids, make false charges to his bank account, forcing it to close, oppressing, and encouraging co-conspirators to try to demonize, bewitch, or claim to be residents in his place, using his P.O. Box without authority, plotting to inflict serious bodily harm on him, maliciously and in bad faith, all act of which are inimical to his good will frustrating his purpose, and to wit:**

**5.**

**On or about January , 1999, Mr. Richard Britson Jr, sent Harold Toscano defense counsels for Allstate Insurance company, who had lost in a law suit in October 28, 1998 to contact plaintiff attorney, Mr. Martin Imudia, pursuant to conspiracy, to destroy all plaintiff's extended families ties and friendship and make him a non entity, and incredible in his claim against Allstate Insurance Company, when they appeal, thinking it was few. It turned out that his first contact, Dr E. Duruoha won't go along, he was eliminated as having known to much, and when plaintiff started getting suspicious, he fired plaintiff, Imudia who was handling plaintiff's workers compensation fired plaintiff herein on or about March 22, 1999. The ends of the conspiracy is to put pressure on plaintiff, on a law suit that had been around for a better part of eighteen years, and just concluded on October 28, 1998, before, Martin was hired for a work related accident in December, 1999, actual contract was signed much later, in February 1999.**

**6.**

**While the above mentioned new Orleans case was going through post trial, plaintiff's attorney, rejected the case, dismissing workers compensation he had filed for the plaintiff, a couple of weeks after Counsel for Allstate Insurance Company decided to appeal, whereas he acquiesced in that trial and had no right to appeal, now plaintiff is**

burdened by one more law suit too many to handle under his injuries circumstance, putting a lot of pressure on him on March 22, 1999.

7.

To make matters worse, Harold Toscano had followed plaintiff to his work on February 28, 1999, down Hynes boulevard, to Wal Mart on 1-10 Service Road Eastern New Orleans, and orchestrated for him to be fired by his employer also, possibly stressing that plaintiff's injury would require surgery, and presented medical evidence he had subpoenaed, or gotten from Martin Imudia,

8.

(a) On March 5, 1999, Harold Toscano, appealed suspensively, suspending the execution of the judgment he had acquiesced in, and tendered insurance policy of $100,000.00/$300,000.00, to satisfy the said judgment against his clients Allstate insurance Company, even though the court only awarded about $36,000.00, which gave no right to appeal to Allstate, based on acquiescence. However, on March 10, 1999, plaintiff was fired by his employer for tardiness, while he was still on vacation, started after the February 28, 1999, that Mr. Harold Toscano shadowed him in disguise, to his light duty work location, in bad faith.

(b) On or about March 26, 1999, plaintiff refilled the workmen's compensation, in proper person, and secured agreement with his employer PCA International(American Studios Inc.) that they would pay all wages owing and due, transportation, medical expenses, etc. His employer paid once and stopped paying. He pursued the workmen's compensation, while return date was set for Harold Toscano and Allstate insurance Company for August, 1999, which came and past without Allstate insurance counsel filing his brief, plaintiff moved to dismiss that appeal in September, 1999, based on abandonment, and loss of jurisdiction, to no avail. September past, October, 1999, November 1999, December, 1999, January,

2000, February 2000, and March 2000, before counsel for Allstate insurance, moved to filed extension of time to filed brief, and plaintiff, once more tried to dismiss to their appeal, because the record was not even complete, but was again, denied, his judgment reversed and dismissed on October 4, 2000, by suppressing his evidence, pursuant to the said conspiracy, whereas there was evidence, beyond all reasonable doubt, as will more fully appear hereafter.

(c ) Meanwhile, with the personal injury judgment suspended by appeal, and dismissed, plaintiff suffered while still unemployed, thus pursued his workers compensation claim to trial, with no attorney, and finally secured a judgment against his employer by February 21, 2001, with penalty.

(d) Plaintiff demanded to execute the workmen's compensation judgment, but defendants, arbitrarily refused to pay, so he amended his wage and vicarious liability suit at the Twenty Fourth Judicial District Court, Parish of Jefferson to join issues, resolve and execute the judgment.

9.

(a) (b) Jeffrey Napolitano, was the counsel for Reliance Insurance, and PCA International, who after losing a workmen's compensation law suit in the administrative phase, on February 21, 2001, affirmed about October 28, 2002, urged and moved the remainder of issues to be tried and executed at the 24th Judicial District Court, Parish of Jefferson, entered into conspiracy with the Richard Britson, and Harold Toscano group, after noticing that plaintiff had filed a petition to annul defendant Allstate Insurance Companies, absolutely null judgment of October 4, 2000, in September, 2001.

(a.ii) Daniel Schott, clerk of court of Fourth Circuit COURT OF appeal, on her part accepted defendants writing of the judgment, and submitted it before plaintiff-appellees brief was due, and pretended she was trying to coerce defendant appellant

to return records to court bearing the evidence adduced at the trial, but suppressed same and dismissed his judgment, after finding liability in plaintiff's favor for paucity of evidence, even though all evidence adduced had been verified prior to trial for over ten years before they were filed, and without the court having jurisdiction, coupled with the fact that defendant by tendering insurance policy of 100,000.00/300,000.00, acquiesced and had agreed to be bound by judgment within $100,000.00 and $300,0000.00, whereas judgment rendered was a whole lot less than $100,000.00, which was the minimum that could have been awarded by the gesture of tendering policy to avoid introduction of more damaging evidence, and she continued to assist the conspirators in omission of important facts, evidence and procedure, being an intrinsic fraud in violation of plaintiff's litigious rights, equal protection of the law, fair trial, and civil rights.

(b) Upon service, Harold Toscano, filed several frivolous exceptions, saying he no longer represent defendants, in intrinsic and extrinsic fraud, aimed to prevent the hearing and execution of plaintiff's Orleans, Parish personal injury judgment reinstatement, then set their exception therein to be tried on or about March 18, 2002, with service to plaintiff, and upon plaintiff's objection, reset same to April 26, 2002. While plaintiff was anticipating trial on April 26, 2002, they fraudulently tried the matter on March 18, 2002, dismissing the petition, and the plaintiff appealed, reversing the dismissal, and reissued his citation, and served defendants after appeal, on March 2003, and thereafter obtained default judgment against defendants on May 4, 2004.

(c ) Plaintiff tried to obtained confirmation of default a June 3, 2004, but it was suspended by the court pending proof. Mr. Harold Toscano, upon noticing that his clients had been directly served, waived his objection of representation, and re established himself as counsel, after dragging plaintiff through appeals, and remand,

requested for extension of time to answer for his clients, only after default had been taken against them on June 15, 2004, for service received in 2001.

(d) The first extension of time to file was exhausted without answer being filed, meanwhile the evidence needed to prove and confirm default had been checked out by defendants since August 10, 1999, when defendants' appellant's brief was first due, while the clerk of court searched for these records, defendants, contacted and contracted with James L. Donovan Jr, to oppose the plaintiff from executing his judgments against Harold Toscano, former counsel, for Ronald Melancon, and Allstate Insurance Company, now reinstated at the Civil District Court, first rendered in the Parish of Orleans on October 28, 1998, after they acquiesced, waived calling witnesses, and submitted insurance policy with a minimum cash payment of $100,000.00 and maximum of $300,000.00, losing all rights of appeal in West v. Melancon, et al, but they maliciously, and frivolously, appealed the award of about $36,000.00, which is not up to minimum of policy tendered, thereafter, working behind the scene, conspired and sabotaged his judgment. The Judgment against Harold Toscano was based on acquiescence during trial in 1998.

(e) The object of the conspiracy will be achieved if they successfully retard or delay plaintiff's execution of the judgment for ten years after final judgment, as most judgments in superior courts, maliciously and in bad faith.

(f) The idea is to distract him from concentrating on any particular trial; moving trial dates; setting frivolous depositions; and several hearings; straining him, exhausting his resources, and making the litigation prohibitively expensive, while putting off trial on the merits, and Hon. Ken Reese and Hon. Steven Windhorst were privy, and willing to assist them in all kinds of frivolous motions. In fact, Hon. Court, Div. "L" CDC helped James L. Donovan achieve this between September 8, 2004, and October 8, 2004, when he back dated motion and order plaintiff was asked to sign on

October 22, 2004, back to September 8, 2004; and to bump a trial, or claim that he had lost jurisdiction for matter set for March 4, 2005, and by this fraud forcing plaintiff to go to the court of appeal to remand record to trial court for trial on June 3, 2005, and even though defendants never showed up for trial, falsely claimed that they did and was given a judgment on June 3, 2005,while plaintiff was being held hostage through the conspiracy of Allstate Insurance Company, but granting appeal on June 8, 2005, before signing the judgment on June 16, 2005, with several fraudulent presentations.

(f) By January 13, 2006, the conspirators consulted with Jeffrey Napolitano to repeat the same tactics in the case of PCA Int'l and Reliance National (LIGA). This time, they got the assistance of Gretna Police, to keep him out of court, and thereafter, connived with the city of Gretna municipal court to harass, frustrate, and abuse plaintiff herein, and to further this purpose consulted with Emmanuel, after a continued hearing of May 1, 2006, when Jeffrey Napolitano, verified about where plaintiff makes his trial process, and finding out that James Donovan, Jr and Harold Toscano had kept up with the new location, by placing Emmanuel to break the concentration of plaintiff, by stumping on the floor of the upper apartment, raising his blood pressure and concentration making him sick, and unable to timely complete his motions and processes, at this temporary location, as will more fully appear hereafter.

10.

(a) Gretna Police, through Chris Fortmeyer, pursuant to the said conspiracy to kept petitioner from filing subpoena duces tecum requiring certain defendants witnesses to bring documents to court and testify at a hearing set for February 13, 2006, harassed, intimidated and bruised his wrists, and in an effort to cover up their acts of brutality, brought frivolous charges against plaintiff on January 13, 2006, all

to keep him from pursuing his workmen's compensation claim as a proven disabled person, within the context of Americans with Disability Act, in the cloak of official duty. They then set several trial dates to harass him without showing up for trial of the alleged misdemeanor, and now plan to inflict serious bodily harm on petitioner under the pretext of Court struggle, or resisting arrest on designated for February 13, 2007, municipal City hall trial day purposely setting to identical trial date, with the workmen's compensation trial date of last year when they hurt him and kept him from filing his subpoena, as if one has something to do with the other as if he was the defendant in the February 13, 2006 trial date at 24th JDC Div. "J" ; for no just cause, all acts of which are inimical to his good will and the litigation of his wage liability, therefore they need to be restrained.

(b) The City of Gretna, Gretna Police, and Twenty Fourth Judicial District Court, Parish of Jefferson had previously, succeeded in keeping plaintiff out of court several times, refusing to grant him opportunity to fully present his case, nor grant appeal for same, in 1996, an instance when plaintiff was robbed as a cashier by armed men, and 1999, when his automobile repairer took money and refused to repair his car, which they had promised to repair, but failed to repair for over two months, and made minor repair after plaintiff had instructed them to return his car because he had changed his mind about repairing it; thus they did just about anything to cause him agony, misery, frustrating him by inducing his money to be tied up in many different ways that his checks would bounds for them to take him into custody, and in some instance, resulting in his eviction to run him out of city, and took his firearms and never returned same to him, despite demand that they return same, to no avail, while claiming to protect it for him. They had also interfered in his contractual relationship, subleasing, invading his privacy, or used his apartment unlawfully, in his absence. Their concerted acts with Allstate Insurance Company, LIGA, and other above

mentioned organization has cost him over $6,302, 427.00, up to date, discriminating against him by fraud.

11.

Apart from government and law enforcement officers, the conspirators colluded with banks, retail stores, phone companies, internet, to persecute and frustrate him, making fax and E-mail a prerequisite to filing and winning, and or litigating ones right in court hearing, removing equal access to justice from indigents, and charging them for copies more than the prevailing market price, and denying them justice, just for being poor, petitioner herein inclusive, contrary to the authentic provisions of law, for paupers, indigent 428 F. Supp. 728; thus prejudicing plaintiff, maliciously and in bad faith.

12.

(a) (i) Regions Bank, Best Buy, J.G. Wentworth, Bellsouth, and AOL, Anthony Rhodes, and Emmanuel became the extrinsic fraud participants together with police, to deplete petitioner's financially, and make destitute by fines, false billings, overdrafts, phony charges, rebate, bait and switch, with no intentions whatsoever to deliver, only to tie up money, close his accounts, as unknown person.

(a. ii) For example, Richard Britson, Harold Toscano, and James L. Donovan Jr. hired Anthony Rhodes(member of Castillios' family) as special process server, his brother had already filed charges of insufficient check against plaintiff and failed; now they have a coordinate in Regions Bank and everywhere plaintiff decides to do business, for example:

(a.iii) Anthony Rhodes and Emmanuel were the executors of Allstate Insurance Company plot. In 2005, when they believed that plaintiff could report their crime, and disorganize their plot if they face charges. Petitioner filed evidence at Civil District Court, Parish of Orleans to be heard on March 4, 2005, they ordered Paul Valteau to

be destroyed, and he shred them, and never served the process to Allstate Insurance, with the privy knowledge of James L. Donovan Jr. Based on no service, and part of record being on appeal, petitioner supplemented and refilled the evidence for sanctions in May 8, 2005, and reset the sanction for June 3, 2005. They moved to take hold of him, subjecting him to torture, execution between May 8, and 11, 2005, after putting dangerous creatures in his legal base to attack him, causing him serious bodily injuries, to his left leg, led to his hospitalization where he lost his freedom.

(iv) After brief discharge on May 17, 2005, he was transferred to another hospital till June 3, 2005, again, and let go after defendants had dismissed his case on June 3, 2005, with strict instruction never to go to court, but he did.

(v) During the attack Emmanuel threatened to shoot through the door and hit him in the heart; laser shots fired at him were blocked with plastic records, from 11 p.m. till 4:30 a.m. Report made to Congress man Jefferson, were not allowed to reach him, and Senator Mary Landreau, did not return his call. Conference with FBI was cancelled, as Allstate Insurance Company and its agents terrorized him.

(b.) On or about August 26, 2005, Allstate Insurance Company were granted a restraining order and injunction without citation, nor service, commanding petitioner, that he must seek all his relief in the court of appeal, where Daniel Schott always stack the facts by omission in defendants' favor, thus restraining him from getting any relief from the district court, thus preventing hearing on the confinement.

(c. i) Maria Tenorio-Oser, and Regions Bank are some of many other institutions of choice for this particular conspiracy to strip and dispossess plaintiff herein;

( c ii) Anthony Rhodes was involved way before, and sort to contain plaintiff through his live in girl friend as Mary K cosmetic peddler, or sales representative; when that effort failed in 1989 his live-in girl friend was fired. They resumed their

effort, when he was set up with another, and when a stab wound in his arm at sleep and other allures failed to eliminate him, he was evicted. They seek to destroy his whole world, and heritage. Somehow, Maria Tenerio-Oser went from Mary-K to Regions Bank, where she constantly monitored plaintiff's account.

(ciii) In January , 2001, another Allstate Insurance coordinate Constable Mark, placed by Gretna Police to supervise eviction, he took plaintiff's gun and gave same to Gretna Police after eviction, supposedly for safe keeping, they had since refused to return his hand gun to him. Julio Castillo was the evictor for his part, tried to claim that he was given a bad check, whereas, he stole a check that had been forfeited due to condition precedent, who now substituted himself with his brother Anthony Rhodes, who had shed the Castillo family name for Rhodes, Anthony, as will more fully appear herein. <u>234 F. Supp. 201, 203, Next they set up Ms Pepper to trap him while being their hostage, between May 25, 2005 and June 3, 2005, when he was let out of the hospital, well after defendants had allegedly taken judgment against him, dismissed plaintiff's motion for sanction against them. Petitioner had to call police to free him on June 3, 2005.</u>

(d) Plaintiff never suspected Allstate Insurance Company, while Julio Castillo was hostile to him, until they made, Anthony Rhodes, special process server, who later agreed to compensate plaintiff for his losses from the legal base, before plaintiff realized that it has been the same old plot. Rhodes agreed to pay petitioner, one thousand eight hundred ($1,800.00) Dollars, out of five thousand Dollars worth of damage out of compromise, which is to be paid as follows: one thousand ( $1,000.00) cash; eight hundred ( $800.00) Dollars for setting up electric pole as community service for his church, whose musical instruments etc were damaged, or looted by their plot. He paid four hundred Dollars in cash up front, and then thirty ( $30.00) Dollars, later, with a balance of five hundred seventy (

$570.00) Dollars, and the eight hundred for installing electric pole remaining, before he reneged.

(e) During Katrina, he tried to isolate and sedate plaintiff at University Hospital, with his coordinates, securing a denial of medical treatment on the pretext of shortage of drug, thereafter, they stole plaintiff's wallet during evacuation to Austin, Texas; followed him to a hotel with Emanuel, saying he must not be allowed to fully develop his ministry, believing that he will have to many people about him and cause his assassination to be very difficult.

(f) ) Meanwhile, Maria Tenerio-Oser, and Regions Bank for their part in the conspiracy, approved the use of plaintiff's visa card, with their coordinates, in attempt to discredit him, charged many liquors on the card, which was never done before, to destroy his image as drunk. Maria and Regions Bank approved several out of character charges that could have wrung bell, even after the card had been canceled, while denying plaintiff use of his new card, and checks. He deposited more money, after the lost card had been cancelled, and found that the canceled card was still being allowed, while the new one was rejected every now and then. Maria Tenerio-Oser, categorically, stated that Regions Bank don't have to refund his service and over draft charges, while deposit amount exceeded free check cash amount and refused to completely restore the stolen money.

He noticed that there was a $570.00 payment, which coincide with the five hundred and seventy ($570.00) balance Anthony Rhodes, her boy friend was going to pay petitioner on behalf of Allstate Insurance Company, et al, which was done with the endorsement of Richard Macaluso, bank manager for Regions Bank. Clayton Act 15 U.S.C.§ 12-28 Next petitioner notices a lot of coincidences.

13.

(a) When plaintiff secured a mobile phone # (512) 971 5338, in Austin Texas, Richard Macaluso, Maria Tenerio-Oser, and Anthony Rhodes, who was now holding hostage plaintiff's extended family, secured a similar phone number (504) 971 5338, in New Orleans, when he tried to change the area code upon returning from evacuation he was allowed but the payment never went through, identical phone switched with his phone by Cingular, who made several false and unauthorized charges to his account, why denying that such charges were ever made, forced a closing of the account with the help of other entities, such as Bellsouth, AOL, assigning his voice mail (504) 949 9141 to dubious characters, forcing abandonment, when he acquired new number 1-877-537-8721, they assigned 0985537 8727 to another and used same to make fraudulent charges to his Church organization account, again, forcing it to close with collaboration of Regions Bank, who refused to prevent it months and months after it was brought to their notice, instead doubled phantom charges to his accounts. Soon they Anthony and Allstate Insurance, pursuant with to the conspiracy also, bought a land next to his Church property on Port street, often stealing from him to build and organize to sedate or surround him with their cronies at 1600 block of Port Street, maliciously and in bad faith, causing him to suffer credit and loan opportunities.

Somebody was claiming the same address with petitioner, and the same license with petitioner, most of which returns to Regions, or Maria's friend, who may one day use his account number, because he was believed to be the one that was set up as FEMA adjuster for 1603 Port Street, our Church, and he is building a structure across from our premises, and never delivered our FEMA trailer.

14.

(a) Richard Macaluso, and Maria Tenerio-Oser for their part withheld bank statement reasonably enough to not to show charges made for a period of about nine weeks, causing some of his checks to bounds, maliciously and in bad faith.

(b) When the unauthorized charges appeared, and plaintiff tried to verify, Cingular gave him a run around, transferred him from allegedly one customer service representative to another for over an hour, finally deliberately transferring the conference to identify source of charge to Motorola, an entirely different phone company he never called, and thereafter, in concerted effort with Regions Bank, by deceit and fraud, not only kept him from successfully establishing an E-Mail, and forcing the closing of his account, and then induced AOL and Bellsouth to continue the same tactics: transferred phantom charges to his Church organization business account, without bill, nor invoice, concealing the activities as much as possible to depleted the Church account, again forcing it to be closed, and then plotted to take his business with computer they returned to Best buy, sabotaging, menacing his business computer with remote, and witch craft access, imposing other religion to his religion, to demonize him, and make him a nonentity, or wretched; all acts of which are inimical to plaintiff's goodwill, religious practice, which us frustrated his purpose, tormented, agonized and terrorizing him. Without Best buy, withholding vital components and accessories, such as remote control, ATI packages, including controller and graphic cards, and initialization disc, it could have been harder for them to access his computer, remotely. 310 F. 2d 262, 267

15.

(i) Meanwhile, Allstate Insurance Company, through Glen Hanner, Harold Toscano, Richard Britson, and Robert Drouant secured a writ from Court of Appeal, Fourth Circuit, with injunction, without notice, nor citation, commanded plaintiff to

seek all his relief in the court of appeal, instead of trial court, with no intentions to allow any relief to be granted him, as will more fully appear hereafter. 425 P. 2d 974, 978; Model Penal Code 224

(ii) Unbeknownst to the plaintiff, after applying for the said writ, on or about August 26, 2005, they came to hire him as a security office, with a hit man, inviting him to 650 Poydras Street, and together with any deacon, or ministers he might have for employment, with absolutely no intentions of giving him any job that can accommodate his disability, but calculated to eliminate any evidence, and or buy witness to discredit plaintiff, in a bid to completely isolate him, and presenting false evidence, and less than the whole truth to dismiss all his claims.

(iii) All the above mentioned acts have resulted in the denial and violation of plaintiff's his civil rights, equal protection of the law, freedom, due process of the law, frustration of purpose, peacefully secure in his properties, slandered him, denied him aces to net works, defrauded him and caused him over five million due fraud and conspiracy, as will more fully appear hereafter.

16.

(a) The State of Louisiana, through its judicial system has consistently, refused to give plaintiff herein justice, prejudiced him, often conspiring, and perverting justice against him for more than twenty years, violating his due process rights under the Constitution of United States, and denying him equal protection under the law, his litigious rights, and the right to seek redress, as contained in Amendments 1 through Sixth Amendments of the United States Constitution as made applicable to States by the Fourteenth Amendment; therefore, he is entitled to relief under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. §2000e-2; 42 U. S. C. §2000e-4; 42 USC §§1981, 2000(h) relief under the Equal Opportunity Commission, and ADA laws as will more fully appear hereafter.

**(b) For instance: Since January 1984, when plaintiff filed a lawsuit against Allstate Insurance Company, as a result of an automobile accident in June 1983, with a client of Allstate Insurance. To which their client had admitted fault, and counsel acquiesced and tendered a $100,000/$300,000, to satisfy judgment, and judgment rendered against them for $36,000.00, they made frivolous appeal, never filed evidence adduced at trial, and over plaintiff's objection overturned the judgment with the court of appeal, with absolutely no jurisdiction to hear the case, seven months after defendants-appellant's brief was past due.**

**(c ) Plaintiff filed petitions to annul same, and annulled it on May 4, 2004. Filed confirmation of annulment in June 3, 2004, but again, defendants asked to dismiss the judgment pending evidentiary hearing, and without proper notice for appearance attempted to dismiss it, before the court had hearing embank to grant plaintiff leeway to get sanctions against defendants; again, the court stalled from hearing the sanction, and while plaintiff was being held hostage, refused to consolidate cases, and dismissed the award of sanctions.**

**(d ) When plaintiff appealed, defendants applied for injunction, to keep him from bringing action on being held hostage in trial court, commanding him to seek all his relief at the court of appeal.**

**(e) At the court of appeal, they failed to filed their brief which was due in November 2005, but got oral argument, and on April 5, 2006, a presented their brief on same day with half truth, after oral argument on a whole lot less than the whole truth, omitting essential details, and got the court, in essence, hold that a plaintiff held hostage while trial was had a trial against him was reasonable.**

**17.**

**(a) In another instance, Plaintiff successfully prevailed against his employer in a workers compensation case, getting an order to treat, having secured agreement**

that plaintiff's wages would be paid, and then proceeded to enforce same at the District court and try other issues arising out of same. Although the accident happened on March 19, 1998, and wage liability filed March 15, 1999, for past wages, retaliatory discharge, and matters arising from November 29, 2000 through February 21, 2001, again in August, 2001, amendment added in December 2001; defendants never filed answer, but sought discovery, and plaintiff presented himself for discovery, by December 2002, but defendants stopped the discovery, because plaintiff brought a tape record to record the proceeding. Promising to reset it by January 2003, message left with defendants were not returned, and transportation that was to be provided was not provided, and nothing was heard thereafter.

(a) By December 2003, plaintiff proceeded to have a preliminary default against defendants, but the court said they had filed an answer. Throughout 2003, and 2004, defendants kept turning down request for payments of medically necessary equipments; they paid to replace a walker with wheel, seat, and basket but stopped. In December 2005, plaintiff, plaintiff filed for default, although there was no answer, the court denied the default judgment, again, and plaintiff set the matter for trial on the merit, set for February 13, 2006, but the trial was bumped. It was reset for May 1, 2006, by the agreement of parties, on May 1, 2006, defendants filed their answer, and about six months after the court had suggested that answer had been filed.

(b) When the matter was postponed again, defendant that had signed off on trial on the merits, instead employed delay, tactics, asking for discovery, prohibiting plaintiff from recording same, fabricated transcript asked to dismiss case with prejudice, on grounds of no cause of action, and no material issue, but dismissed the proceeding with prejudice on January 4, 2007, by unauthorized use of summary judgment mailed by January 8, 2007, based on facts only experts could have

supplied, after first acquiescence in plaintiff's allegation, admitting that plaintiff's allegations were all true, had the matter had been tried as scheduled.

(c ) Plaintiff wages and commissions unpaid, retaliatory discharge, slander, and arbitrary and capricious refusal to pay, not withstanding, as will more fully appear hereafter.

( d) Plaintiff is still disabled, struggles to pay for living expenses, and a few pay checks from being homeless and not receiving all the treatment he need due to inadequate resources, as will more fully appear hereafter.

(e) On December and plaintiff proceeded to and beyond: slander added in amendment

(f) The court, which pretends to be administering justice, but it was doing was to suppress my plaintiff's evidence, while giving defendants every opportunity to present only their side of the case, refused to grant trial on the merit, and even after defendants had admitted their indebtedness, pursued a ruling to dismiss plaintiff's case rather than give plaintiff a default judgment, which he was entitled to, falsely claiming defendants had filed an answer, even though answer was filed on May 1, 2006, whereas plaintiff had demanded his default in 2003, and 2005, as will more fully appear hereafter.

(g) Honorable court, Div. "J" 24th JDC on December 2003, denied plaintiff, herein, motion for default, falsely claiming that defendants had filed answer to amended petition, pursuant to conspiracy contrived between it and defense counsel, that had had several meetings, in total exclusion of plaintiff herein, rendering secret judgments, without hearing in violation of petitioners litigious rights, under United States Constitution, denying him due process of the law.

(h. ) After several contacts with defendant's appointed representatives through 2004, and making demands to fulfill obligation of judgment of 2001, against them

from administrative, plaintiff tried again, to obtain his default, but, again, Honorable Steven Windhorst, denied the default, saying defendants had filed an answer, and then turned around to ask defendants to filed an answer, after plaintiff had set matters to be tried on the merit, pursuant to conspiracy, with Attorney Jeffrey Napolitano.

18.

(a) After being certain, that the disposition of Honorable court, Div "J" 24th JDC, was not a mistake, but a deliberate contrivance with defendants to achieve their set objective: defraud, oppress, and deny plaintiff justice: litigious rights, suppress, evidence, and secretly execute monetary remunerations due plaintiff, from his wage liability, slander, retaliatory discharge, and arbitrary and capricious refusal to pay for same and treatment, transportation, and prescription costs of plaintiff's work related injuries.

(b) Plaintiff decided to request for certain documents from defendants, and Jeffrey Napolitano, solicited the help of Gretna Police to keep petitioner out of court, thus denying him access to court.

(c) Thus on January 13, 2006, plaintiff appeared to file subpoena for the trial on merit set for February 13, 2006, but when plaintiff tried to get into the court, other conspirators where waiting to stop him from gaining access to the court on the pretext of official duty, handcuffed him for asking them to retain, nose trimmer on his key ring, saying he impersonated an office, when, it turned out that he was an officer before he was injured, and a Christian minister till date, Chris Fortmeyer, Gretna Police, and City of Gretna, who orchestrated his detention, and bruises, changed the charge upon inspecting plaintiff's credentials, accused him of refusing to leave the court, pursuant to the said conspiracy.

(d) Christ Fortmeyer, and City of Gretna, then cited him to appear in court, A-51276-06, but when served with interrogatories to ascertain the jurisdiction of the court, refused to accept the registered mail through Gretna Police, nor answer same to apprise him of what to face, for over six months, but instead, kept changing court dates time after time, and tarnishing plaintiff's character, time after, with showing up in the municipal court for trial, harassing, plaintiff with trial after trial, with no show, neither did he answer plaintiff's Interrogatories, except to harass him, and waste his time frustrating him, pursuant to the said conspiracy, violating his civil rights, to US Constitutional Amendments VI, and Louisiana statutes that dismisses frivolous charges beyond six months, against the law.

(e) The Supreme Court of Louisiana has consistently refused to consider, no hear any of plaintiff's petition, the first case that is part of the subject of this suit has pended for over twenty years, and had been through the courts of appeals more than nine times, with acquiescence in favor of plaintiff, but they refused to let him execute his judgment.

19.

(a) The trial of February 13, 2006, did not take place, because, the judge traveled on the day he had set for trial on the merits, to Baton Rouge, resetting the matter for trial on May 1, 2006. Upon appearing on May 1, 2006, Mr. Jeffrey Napolitano, decided to file defendants' answer, which he should have filed on before January 15, 2002, apparently, on May 1, 2006, and Honorable Steven Windhorst, accepted it pursuant to the said conspiracy, as timely, over plaintiff's objections. He then reset the matter to August 10, 2006, on trial on the merits, plaintiff made demands for settlement of claim, but Napolitano, refused.

(b) Before litigants could board their transportation, Joe Blow, a go between, brought word to Mr. Jeffrey Napolitano, about what he accomplished with the court,

at the southwest end of parking garage, closest to the Gretna court house by Derbigny and Third Street in Gretna, Louisiana and advised him, to the effect that plaintiff's action will be "dismissed", and or dismissal will be granted, within an ear shot of the plaintiff, barely thirty feet from the point of collusion, between 12:33 to 1:15 p.m., on May 1, 2006.

(c) Within a couple of weeks Jeffrey Napolitano, brought a motion to dismiss, instead of the agreed trial, citing a judgment, without citation, nor service to plaintiff, allegedly obtained in 2001, or thereabout, commanding plaintiff to be deposed, whereas, that part of the litigation had been fully litigated and plaintiff awarded judgment to be enforced by this court.

(d) Honorable court Div. "J" 24th JDC, without wasting time granted defendants' trial date, in spite of pending trial on the merit, ordered plaintiff to show cause, on or about July 10, 2006. Plaintiff appeared, made objection, and the court, chastised him, saying, it is aware that he attacked, and disturbed officer Chris Fortmeyer, and Gretna Police from performing their duty, a while ago, sent him out of court, and called him back after the court and defense counsel had discussed their strategy, ordered disabled plaintiff to be deposed the very next day; calculated to put pressure on him, also suspending all trials until all parties could have completed their discoveries. Meanwhile Gretna police was also putting pressure on plaintiff about trial to keep him out of court, but never showing up for trial for over three times, and refusing to dismiss their demand to keep him out of court, or pursue his claim, with false charges, also falsely stated where plaintiff was, maliciously and in bad faith, swearing out a false warrant and citation against petitioner.

(e) Plaintiff's bankers, Regions Bank, were also putting pressure on plaintiff with interlocking directorate, by allowing several undocumented charges to his account, in effort to exhaust his personal account, and the account of his Church's,

maliciously, illegal service fees and charging him over draft fees for the Phantom presentations, which they were specifically told were not authorized, and refused to show any invoice, authority to pay, nor account to which it was been paid, demand after demand for disclosure, while dishonoring legitimate charges by credit cards, checks, humiliating him, and charging out his personal account as reprisal, and then started charging his church organization's accounts without paying fees for unauthorized charges, sometimes, twice a month, plea to stop paying to the illegal, and unauthorized account, not withstanding, and refused to pay $62.00 fee per charge to reconcile account, for negligent and false charges, which is well overdue, all calculated pursuant to the said conspiracy, to destroy his credit, cede his account, damage his reputation, and goodwill, maliciously and in bad faith.

20.

(a) While this was going on, AOL, their accessory, was given the task to keep him off on line, by sending their virus to disrupt his ability to get information on line, required for certain litigation, and appeal process, and sending false billings to his account, that were not authorized, often billing him twice a month, without providing any service to him, even after warning them not to charge him, nor contact him due to dissatisfaction during within first two weeks of free three months trial membership period, and agreeing within two weeks period that they could not give him any service, allegedly due to software problems. Petitioner without invoice notice that they had charged his account after saying they could not provide him serve, contacted his bank, not to allow such charges, on less a verifiable, authentic presentment was made, by invoice, physical check presentation with signature, or credit card belonging to him from this bank, but they negligently ignored the fraud warning, because they also benefit from the fraud by charging overdraft fees payment not authorized by petitioner, neglecting their fiduciary duty to plaintiff. The

said Regions Bank also violated several usury laws, charging service fee when petitioner have sufficient money in his account for exempt, and not allowing, at least, three free checks free of fees, but charged $10.00 fees regardless of amount in deposit between February, 2006, and December, 2006. Thus they continued false charges allegedly from AOL, sometimes twice a month without his approval whatsoever, totally depleting his account, maliciously and in bad faith, and pursuant to the said conspiracy.

(b) AOL and Regions Bank headquarters were contacted, advising them that any false charge that they make, which involves long distant calls, travel to customer service, or cost petitioner time to resolve would bear $62.00 Dollars tracking, investigation fees and overhead fees, and when the charges continued he notified Gary Thomas, of AOL and Richard Macaluso of Regions Bank in writing, to no avail.

(c ) For AOL it was a no contact warning, while Regions Bank accepted at their own risk warning, nevertheless, they continued, and not paid the tracing, or investigation fees.

(d) Between Regions Bank and AOL, at least, nine false billings had been made without remedy, and petitioner is entitled to $62.00, for each such charges, and restoration of fees and money taken out of his account for all fraudulent charges paid, after warning.

21.

(a) Bellsouth was also made partner, pursuant to the conspirators' endeavor to stop, deprive, petitioner, or make him destitute, through destruction of his credit, denial of access to communication, by billing for services ordered, but not provided, refusing to provide service, yet billing plaintiff, refusing to provide a different lines or separate receiver for eight hundred lines, despite repeated advice to do so, instead, it gives services in plaintiff's name to strangers to use and abuse, in effort to

demonize, make destitute, of plaintiff and force him to organization of wizards, his Christian ministerial statutes notwithstanding; and addressed as a lay person, repeated demand to properly address, not withstanding, putting pressure on plaintiff, by charging him over four hundred, twenty five ($425.00) Dollars, for services worth twenty five ($25.00) Dollars to $45.00 forty five Dollars per month, as will more fully appear hereafter. Twenty five dollars up to August, 2006, and $45.00, dollars from August, if they had fully delivered the service, which they did not.

22.

(a) Plaintiff paid for all his process, but the court had set up plaintiff's former attorney, Mr. Martin Imudia, as a counsel and given him credit for money's petitioner paid, and recognized him as counsel pursuant to the said conspiracy, even though, he was never seen at any trial, never helped, and had withdrawn representation several years ago, since 1999.

23.

Plaintiff appeared at the deposition, which defendants essentially structured as yes and no, and answered all the questioned posed by defense counsel, and both defendants and plaintiff agreed that the $1,420.00, weekly gross wages for 520 weeks, was a conservative amount acceptable by both parties, and that plaintiff had been slandered, and defamed, and humiliated; and that his employer fired him between February, 1999, when he decided to filed for workers compensation and March 19, 1999, when status could have run on plaintiff, and that this time coincided with when plaintiff neurologist made a referral for orthopedic evaluation, which the employer refused to do for a long time, and fired him while he was still on vacation. That there was no personal accusation he faced with his employer, except, an incident, when they repeatedly asked him for full search, opening his portfolio, and never found anything in the transparent portfolio.

24.

(a) RTA always discriminated against petitioner, pursuant to the said conspiracy, put him in pain by constantly denying him handicap/disabled person access to majority of their public transportation, delay his moved so that people occupying his apartment could evacuate before he gets their, helping Allstate Insurance, and Reliance Insurance to put people with similar clothings or look alikes to claim he is not handicap, or too mentally inadequate to manage his law suit awards, etc, and at least in one instance caused the loss lose of petitioner's basket by dangerous and negligent driving on 10/21/06 RTA #97355, at 21:20 hrs, a rollator-wheel chair, which they refused to tie down, letting the bus move before passenger with disability and mobility aid could be seated, rolling with rollator after sharp turn and jerk following transfer to another bus by railway on St Claude Ave, basket became lose and was lost before we got to end destination.

(b) On 10-22-06, another driver continued terror and the harassment with bus # 94049, at 18:18, supervisor arrived 18:28 hrs, supervisor came with RTA Unit 6400, and police unit #207 also came but refused to give item number, nor report of incident, nor settle harassment, and had to get refund and walk home from point of attack and harassment. Started with fare, after due proof, stopped bus, let out other passenger, was kept waiting, changed subject to accessing reality, or so, not understood to this day.

( c) On January 9, 2007, RTA bus driver in unit #97260, on St Charles Street, New Orleans, LA, while returning from doctor's care, RTA in pursuant to conspiracy to maximize my suffering, and to coerce me to give up my identity and join their witch system, harassed and tormented me; refusing to extend courtesy required for disabled people: refused to let out lift, and after boarding, denied me ADA seat, and never tied my Deluxe Rollator: "chair on wheel" down, negligently drove dangerously

down by Louisiana Ave on St Charles St, causing me aches and pains, and then stopped by Jackson on St Charles Street, detained me and called his supervisor, before he looked into his hand book to release me, leaving me stranded by St Andrew St on St Charles, before, I could find another bus. RTA has repeated this act numerous times without reprieve. At first, It was that they won't honor Jefferson Parish ADA picture ID, nor Social Security ID, but even after making RTA ADA ID they still gave me the same treatment, over and over again, maliciously and in bad faith, discriminating against me, as will more fully appear hereafter.

25.

Allstate Insurance Company on its part in the said racketeering and conspiracy to deprive me of my lawful claim, enlisted the support of Richard Britson, Harold Toscano, Jeffrey Napolitano, and James Donovan, Jr, through the auspices of Glen Hanner, who also retained Anthony Rhodes, as special process server, who into turn used his various tenants, especially Emanuel, who they initially paid forty thousand for his part in the said conspiracy, by 1910 Mazant Street, and then masked to serve/disrupt, and harass plaintiff's legal activities around Mazant on Royal.

(b) On July 10, 2006, James L. Donovan, Jr., masked behind, with Joe Blow, carrying the filed, with Honorable Steven Windhorst presiding, sent plaintiff out of court for making objection, while they contacted verbally and by signal dictated how to abort plaintiff's hearing on merit, and set impossible condition, and using same as a pretext to dismiss his slander/wages/slander claims execution, and when that failed they dismissed his claims anyway, pursuant to the conspiracy, after defendants had confessed judgment that plaintiff's claims were well founded and have no grounds to oppose same on November 17, 2006, maliciously and in bad faith.

26.

**Best Buy and Compaq are computer dealers and electronic communications manufacturers, respectively, duly authorized and doing business in the State of Louisiana, which together Best Buy.**

**In April, 2006, Compaq promised to deliver software and packages for their product, which Best Buy advertised but didn't deliver, including Microsoft office professional, ATI package, 9.1 flash drive, etc. but rerouted his communication to J. G. Wentworth, which took his money and never delivered the promised products, despite demand to do so. J. G. Wentworth organization, in pursuant to conspiracy to maximize plaintiff's suffering, deplete his assets, seed, and or take over his business, intercepted and redirected communication intended for Compaq corporation, taking about eighty eight ($88.00) and then thirty Dollars in another instance through their Geek squad from him without delivering the office suit/ATI package, initialization disk to active basic Encarta Encyclopedia, etc., needed to operate his machine and registration directed by Microsoft Corporation, and may have illegally stored vital confidential information about his church ministry and interfered in the peaceful practice of his religion, violating his Constitutional rights on or about May 2006. Repeated demand to send same to Compaq to implement, and or return same, or stay off had been to no avail.**

27.

**(A) HANO is Housing Association, duly authorized to provide guesthouse, and temporary housing for low income and disabled persons, duly authorized and doing business in the city of New Orleans, State of Louisiana.**

**(B) Robert Stack is a person of the full age of the majority, domiciled in the city of New Orleans, state of Louisiana. Who with HANO, T. Lewis, Emmanuel, Best Buy, Geek Squad, taped phone lines, cross electric wires to start fire, diverted same,**

**tampered with his computer and legal documents for Allstate Insurance Company and Jeffrey Napolitano, thus had also interfered in his contractual relationship, subleasing, invading his privacy, or used his apartment for witch dance, initiation, state out, acting, double renting, unlawfully, in his absence.**

**28.**

**(a) All the above mentioned individuals have contacted and contracted to harass, terrorized, slandered, embarrassed, and bewitched, and or defamed the plaintiff, Dodiyi J. Williamwest, to put him out of court, and frustrate his purpose in legal obligation owed to him by Allstate Insurance Company, PCA, International (American Studios) Inc.), Reliance National, Jeffrey Napolitano, and Louisiana Insurance Guarantee Association (LIGA), by pressuring him and bringing him to destitution, as follows:**

**I. The Court, State of Louisiana, and City of New Orleans, Ken Reeses, Daniel Schott, perverted justice to withhold or unreasonably seize his money: one million five hundred thousand bond posted with the state from a personal injury claim, penalties, and costs therein.**

**II. The Court, State of Louisiana, Rob Schouest, Steven Windhorst, Jon Gergenheimer, and City of Gretna perverted justice, to waste, and misappropriate his wages, commission, bonuses, treatment money, penalties and costs from his employers admitted to be in excess, on November 17, 2006, estimated at one million, eight hundred thousand in employment benefit, treatment of work injury, imposed fraudulent judgments on his superior judgments, delayed and denied him the execution of same, asking him to seek relief only in court of appeal, without any intension for him to have any relief from his injuries.**

**III. Allstate Insurance Company, Reliance National(LIGA) Genn Hanner, Richard Britson, Jr. Harold Toscano, Jr., James L. Donovan, Jr., Jeffrey Napolitano, Jr.**

Martin Imudia, Ken Reese, Steven Windhorst, Groutch , Anthony Rhodes, and Emmanuel, Mr. Hunter, Chris Forthmeyer, Joe Blow, Richard Macaluso, Maria Tenerio-Oser, Gary Thomas, Best Buy , Circuit City, Paul Valteau, Daniel Schott, Bellsouth and Robert Stack, HANO etc had conspired with their cronies to withhold, terrorize or cause a lose of over $6, 000.000.00 in wages: workers compensation, personal injury, violation of civil rights, denial of access to justice, seeding and ceding his properties, baiting & switching and fraudulently , and duplicating his phone lines to destroy his heritage, putting them under duress to act out of character, blackmailing and intimidating, his family and heritage, disfiguring, transplanting, maiming, oppressing and suppression of evidence, denying him equal protection, and making his claim prohibitively expensive, fraudulently, and without any intension to let him execute his judgments, unreasonably searching his records beyond twenty six years, exploiting and taking advantage of his heritage, by sexual predatory and lewd conducts, and eliminating witnesses, causing him agony, humiliation, pain and suffering, as will more fully appear herein, all act of which are prohibited by the following laws:

(b) 71 CJS 513; Fed. R. Civ. Proc. § 18(a); 19(a); 20(a) –23

(c ) 314 P 2d 625, 631; 47 F. Supp. 395, 400-01; Penal Code §5.03

(d)Title VII of the Civil Rights Acts of 1964, 42 U.S. C. § 2000e-2; 42 U.S.C. §2000e-4; §2000(h); 42 U.S.C. §§ 1975; 42 U.S.C. §§1981, relief under the Equal Opportunity Commission, and ADA laws.

(e) Clayton Act 15 USC § 12-27;

(f) Robinson-Patman Act Sec. 2(a); 15 USC § 13(a)(c)(d)-(f)

. 234 F. Supp. 201, 203; 310 F. 2d 262, 267

Title 28 U. S. C. A. § 1651, § 1652, § 1654, 428 F. Supp. 728

Jurisdiction in this matter is also founded on Civil Rights #440; #443; #445; #446; especially, Racketeering #470; ~~Title 18 U.S.C. § 232~~; 42 U.S.C. 1983; Civil

rights Acts 365 US 167; 564 F. 2d 849, 855; Freedom of information #895; Equal Access to justice# 900; #950; Contracts #110; 190; Torts #320; #370; #371; Banks and banking # 430; Labor: #791;15 U. S. C. § 45(1)345 U.S. § 278,282; US Constitutional Amendments 1-6, as made applicable by the Fourteenth, as will more fully appear hereafter.

IV. Regions Bank, Richard Macaluso, Maria Tenerio-Oser, were assessories in the fraud, and conspiracy to charge-out plaintiff's accounts from September, 2005, through December, 2006, jointly severally, and in solidarity.

V. BestBuy, Compaq, J. G. Wentworth, and Geek Squad, jointly, severally, and in solidarity

VI. AOL, Gary Thomas, Jointly, severally, and in solidarity.

VII. Richard Britson, Harold Toscano, James Donovan, Martin Imudia, Anthony Rhodes, Emmanuel,

VIII. Jeffrey Napolitano, Steven Windhorst, Chris Fortmeyer, and City of Gretna, jointly, severally, and in solidarity.

IX. Daniel Schott, Ken Reese, Paul Valteau, and Supreme Court of Louisiana, jointly, severally, and in solidarity.

X. Bellsouth, Brandy, Elane, Renee Thomas, Mary trail, and Rachael, jointly, severally, and in solidarity.

XI. HANO, Emmanuel, Robert Stack, Terry Lewis, jointly, severally, and in solidarity.

XII. Honorable Jon Gergeheimer, State of Louisiana, Civil District Court, Parish of Orleans, Twenty Fourth Judicial District Court, Parish of Jefferson, Hunter, and City of Orleans, jointly, severally, and in solidarity.

29.

(a) The conspirators goal will be realized, If their coordinated process and attack succeed, they shall be able to seed plaintiff Dodiyi J. Williamwest's apartment, take over his bank accounts, non-profit association, phone lines, Post Office Box, his good name, and anoint other individuals in his stead that will then execute bond of One million and five hundred thousand Dollars, posted for and on behalf of Allstate Insurance Company, and One Million eight hundred thousand Dollars, being acceptable amount of settlement admitted by Jeffrey Napolitano, Counsel for Louisiana Insurance Guarantee Association/ Reliance National/PCA International, and church property under his trusteeship.

(b) Their plot was to bankrupt, and render plaintiff frustrated and unable to have money to litigate, appear like a destitute: object of scorn, without ability to pursue his Constitutional Rights, and or substantially, delay his mobility, which executing these bonds would have given him, thus terrorize him, deny him all financial aid, and access to courts, and or cripple such ability rendering him homeless, harassed and undone, unclean or unkempt, degrading him, and maximizing his suffering.

(c) All the above mentioned acts are inimical to the plaintiff's goodwill, frustration of his purpose, substantially have contributed to plaintiff's suffering and anguish, and tormented his peaceful enjoyment of his home, property, and much needed rest to recover from his disability, due to harassment, terror, loss of sleep, false charges, false billings, financial loss, threat of taking his ministries donations, service, misdirecting and misleading prospects, and his congregation, by deceit, substituting his anointing with infidels, depleting and closing his bank accounts, and dismissal of the execution of his judgments by fraud and conspiracy, causing monetary him loss of over three million Dollars, maliciously and in bad faith.

(d) The laws of United States of America, provides relief for denial of access to justice, fraud, conspiracy, bait and switch, frustration of purpose, breach of contract and fiduciary duties, harass, intrinsic and extrinsic fraud, equal protection of the laws, due process of the laws, suppression of evidence, false billings, personal injuries, wage liabilities, arbitrary capricious refusal to pay, access to public buildings, and paid transportation, protection of personal account, burglary, false imprisonment. etc.

( e) All the above mentioned defendants are truly indebted to the petitioner, and each, jointly, severally, and in solidarity, as stated in the above and forgoing premises, and for violation of petitioners civil rights, as this court determines, after due proceedings had.

30.

Plaintiff herein is a Christian minister, who runs a charitable non profit organization out of his home, and have been serving this community for a considerable amount of time, who is also disabled, did not make enough to file for income tax, and netted an income of six thousand nine hundred and nineteen ($6,919.50) Dollars, and fifty cents, last year, a good deal of which also served as community assistance, and is unable to pay for the cost of this litigation as they accrue, and desire to proceed in forma pauperis, *ipso factor,* beg for the leave of this court to allow him to file, and litigate, without payment of costs herein in advance, as they accrue. 428 F. Supp. 728.

Wherefore petitioner, Dodiyi J. Williamwest, prays that after due proceedings had, there be judgment in his favor and against Allstate insurance Company, et al, jointly, severally, and in solidarity for all relief in amount and equitable remedy, sufficient to compensate him for his wages, personal injury and treatment, violation of civil rights, prejudice;

Petitioner further prays for the annulment of the fraudulent judgments imposed on his superior judgments at CDC Div. "L" June 3, &16, etc 2005, and 24th JDC Div. "J",

on January 4, 2007, the decree executed for the dismissal of all his judgments, rights to appeal, etc at Twenty Fourth Judicial District Court, Parish of Jefferson, City of Gretna; and the Supreme Ct of Louisiana ignored to consider, frivolously, and maliciously upholding fraud and felonious acts as reasonable from Civil District Court, Parish of Orleans.

Petitioner further prays that all appeals taken be transferred , from Twenty Fourth Judicial District Court, Parish of Jefferson, and Gretna City Courts, to this court.

Petitioner further prays for the Supreme Court of Louisiana, and Court of Appeal Fourth Circuit, and Twenty Fourth Judicial District Court, Parish of Jefferson, Division "J" and "N" be transferred for review as evidence herein, through Hon. Jon Gergenheimer, Hon. Rod A. Schouest, and Gretna Police & City Court; 99-76004?, and citation # A-51276-06, transfer all its record to this court for review as evidence.

Petitioner Dodiyi J. Williamwest, further prays there be further decree granting him relief that may just and proper, including penalties, costs, legal interest, from date of judicial demand until paid, and for all equitable relief under these premises that may be just and proper against Allstate Insurance Company, et al.

RESPECFULLY SUBMITTED BY:

Bro. Dodiyi J. Williamwest, Apostle
P. O. Box 57904
New Orleans, LA 70157-7904
Tel. Phone: (504) 947 1670(Lines Open Thursdays 12:00-3:30 p.m.)